# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**LARRY POINTER, III**                                                          **PETITIONER**

**v.**                                                **No. 3:17CV56-NBB-RP**

**EARNEST LEE, ET AL.**                                                    **RESPONDENTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Larry Pointer for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition. The petitioner has not replied, and the deadline to do so has expired. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

> The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id*. Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

**Facts and Procedural Posture**

Larry Pointer, III, is in the custody of the Mississippi Department of Corrections and is currently housed at the Mississippi State Penitentiary in Parchman, Mississippi. Pointer was convicted of murder and aggravated assault in the Circuit Court of Marshall County, Mississippi. On March 4, 2015, the court sentenced Pointer to serve consecutive terms of life imprisonment for murder and twenty (20) years for aggravated assault, with fifteen (15) years suspended, to be served in the custody of the Mississippi Department of Corrections. *See* State Court Record ("S.C.R."), Vol. 1, p. 219-221. Pointer then appealed his convictions and sentences to the Mississippi Supreme Court, raising the following issues:

> **Issue 1**. There was insufficient evidence to support an aggravated assault conviction, and Pointer's motions for a directed verdict and judgment notwithstanding the verdict should have been granted.[1]

---

[1] This is the only issue raised by Pointer's appellate counsel. Pointer raised the remaining issues in his *pro se* supplemental brief.

**Issue 2**. There was insufficient evidence to support murder conviction, Pointer's motions for a directed verdict and judgment notwithstanding the verdict should have been granted, and Pointer's confession was insufficient to support a guilty verdict.

**Issue 3**. It was error to allow jury to hear Pointer's grandmother's testimony because it was coerced and unreliable.

**Issue 4**. The trial court erred by failing to hold a competency hearing.

On August 30, 2016, the Mississippi Court of Appeals unanimously affirmed Mr. Pointer's convictions and sentences. *See Pointer v. State*, 202 So. 3d 210 (Miss. Ct. App. 2016). According to the Mississippi Court of Appeals:

> Pointer raises four issues on appeal. He argues that there was insufficient evidence to support an aggravated assault conviction and that his motions for a directed verdict notwithstanding the verdict should have been granted. He makes the same argument with respect to his murder conviction and argues that his confession was insufficient to support a guilty verdict. He also argues that it was error to allow the jury to hear his grandmother's testimony because it was coerced and unreliable. Finally, Pointer claims that the trial court erred by not holding a competency hearing. There is no merit to any of Pointer's claims. Therefore, we affirm.

*Id*. at 213-14 (emphasis added).

## Facts Established at Trial

The court summarizes the facts as established at trial[2] as accurately recounted by the Mississippi Court of Appeals in its appellate decision:

> On September 15, 2012, Larry Pointer, III, who is known as "Nip" to friends and family, drove his friend Robert Brown and his cousin Ray Crawford from Marshall County to Memphis. Brown asked Pointer to drive him to Memphis for some undisclosed purpose, and Pointer asked Crawford to join them. On their way back to Marshall County, Pointer and Brown argued after Pointer claimed that Brown had reneged on a promise to give him gas money. The argument escalated, and Brown threatened to kill Pointer. Crawford fell asleep at some point after the argument

---

[2] Pointer did not testify at trial; however, he made two (2) statements to law enforcement officers, which were captured in audio and video recordings. Law enforcement officers also testified regarding Pointer's statements. It is to these statements (confessions) to which the court refers in this memorandum opinion.

started. While Crawford slept, Pointer drove to the house where he and his father, Larry Pointer, Jr. (Larry), lived with his grandmother, Nellie Pointer (Nellie). Pointer told Brown that he was going inside to get gas money.

*Pointer v. State,* 202 So. 3d at 212.

Crawford testified that he had fallen asleep in the backseat of Pointer's car, which was parked outside of the house, and he was awakened by a gunshot to his arm. S.C.R. Vol. 3, p. 119-120. Crawford ran inside Nellie's home exclaiming that he had been shot, and Nellie called 911. S.C.R. Vol. 3, at p. 120, 144-145. A recording of the 911 call was played at trial. S.C.R. Vol. 3, at p. 146; Vol. 4, at p. 167, 280.[3] Nellie told the dispatcher that Crawford had been shot in the arm. S.C.R. Vol. 3, at p. 146-147. Nellie then began screaming and hysterically yelling, "Larry, don't touch that boy! Larry fixing to go to jail." S.C.R. Vol. 4, at p. 155. The court summarized the remaining portion of the 911 recording:

> Nellie then mentioned a knife, and the dispatcher asked who had a knife, a question to which Nellie responded, "My grandson." Nellie then mentioned stabbing, and the dispatcher asked her who was doing the stabbing, but Nellie said she did not know. The dispatcher also asked who had fired the shot that hit Crawford, but Nellie again said that she did not know.

*Pointer v. State,* 202 So. 3d at 212.

When law enforcement arrived, Brown was lying on the ground outside of the house and was already dead. S.C.R. Vol. 3, at p. 133-134. He had suffered more than two (2) dozen stab wounds, as the autopsy showed he had been stabbed six (6) times in the head and neck, nineteen (19) times in the

---

[3] The recordings, as well as all other trial exhibits, are returned to the circuit clerk's office once the appellate court renders its decision; therefore, the trial exhibits are not maintained by the Mississippi Supreme Court Clerk's Office once the appeal has been decided. Thus, the discussion of the recordings comes entirely from the testifying witness' descriptions of the recordings contained within the record and from the descriptions published in the opinion of the Mississippi Court of Appeals.

torso, and once in the arm. S.C.R. Vol. 4, at p. 225-227. Pointer, Nellie, and Crawford were present at the scene. S.C.R. Vol. 3, at p. 138. Pointer was taken into custody and subsequently gave two (2) recorded statements to law enforcement. S.C.R. Vol. 4, p. 187-191. As set forth by the Mississippi Court of Appeals:

> Pointer gave his first statement to investigator Kelly McMillin and Deputy Justin Gray of the Marshall County Sheriff's Department. Pointer told them that he went inside his grandmother's house to get gas money, and when he returned to his car, Brown was gone. Pointer stated that as he waited in his car with Crawford, who was still asleep, Brown appeared with a shotgun that he had retrieved from the trunk of the car. Pointer claimed that Brown had shot Crawford in the arm. Pointer and Brown then struggled over both the gun and a knife that Pointer had kept in his car. Pointer somehow picked up a beer bottle, struck Brown in the head with it, and then picked up the knife. Pointer then stabbed Brown repeatedly. Pointer admitted that he may have stabbed Brown too many times, but he claimed that he was afraid that Brown would kill him. After stabbing Brown, Pointer went inside the house to check on Crawford.
>
> Investigator Jason Mills, also with the Marshall County Sheriff's Department, subsequently learned that Pointer's father, Larry, was also present when Crawford was shot, and Brown was killed. Based on this information, McMillin and Mills re-interviewed Pointer. During this second interview, Pointer admitted that Larry was present. Pointer stated that when he arrived at Nellie's house, he went inside and told Larry that Brown had threatened him. Larry then picked up a shotgun, followed Pointer outside, and shot at Brown, who was still sitting in the car. However, the bullet struck Crawford, who then ran into Nellie's house. Pointer and Larry then pulled Brown out of the car and began beating him. After Pointer hit Brown over the head with a beer bottle, he told Larry to go inside and get a knife. When Larry returned with the knife, Pointer first asked Larry to stab Brown. When Larry declined, Pointer took the knife from him and repeatedly stabbed Brown. According to Pointer, Larry told him to put the shotgun in the car to help support a self-defense claim.

*Pointer v. State,* 202 So. 3d at 212.

Pointer was indicted for the murder of Brown and the aggravated assault on Crawford. At trial, Crawford maintained that he did not see who shot him or any of the ensuing altercation that led to Brown's death; however, he stated that Larry, Pointer's father, later apologized for shooting him. S.C.R. Vol. 3, at p. 122-123.

Nellie also testified at trial. Nellie's testimony was dissembling. She clearly did not want to further incriminate her son or grandson; nonetheless, she ultimately admitted that both were "jumping on" the victim. S.C.R. Vol. 4, at p. 167. She also testified that it was Pointer who had the knife. S.C.R. Vol. 4, at p. 167-168. She claimed that the "Larry" she repeatedly implored to not hurt "that child" on the 911 recording was Pointer, her grandson, even though she usually called him by his nickname, Nip. S.C.R. Vol. 4, at p. 147-148, 153-154. She also claimed that she never saw Larry outside fighting with Brown. S.C.R. Vol. 4, at p. 156, 163. Nellie admitted that she told Larry to leave before law enforcement arrived. S.C.R. Vol. 4, at p. 152. She stated that she did so because she feared that Larry would be blamed for whatever occurred that night. *Id*.

The jury found Pointer guilty for the murder of Brown and the aggravated assault of Crawford. He was sentenced to concurrent terms of life and twenty (20) years, with fifteen (15) years suspended.

On December 6, 2016, Pointer filed an "Application for Leave to Proceed in the Trial Court on Petition for Post Conviction Collateral Relief with Incorporated Motion for DNA Testing" in the Mississippi Supreme Court, wherein Pointer raised the following claims *pro se*:[4]

    A.    Trial counsel was ineffective in failing to test DNA evidence.

    B.    Trial counsel was ineffective in failing to have 911 tape transcribed.

    C.    Trial counsel was ineffective in abandoning only defense of self-defense, where Pointer admits responsibility in statements.

---

[4] Pointer first requested that the court "grant DNA testing on all biological evidence not previously tested and vacate and set aside the convictions pursuant to § 99-31-1, *et seq*. of the Miss code Annotated." Then, Pointer raised his various claims of ineffective assistance of counsel. *See* Exhibit B. (Application for Leave to Proceed in the Trial Court on Petition for Post Conviction Collateral Relief with Incorporated Motion for DNA Testing in Cause No. 2016-M-01714).

D. Trial counsel was ineffective in allowing Pointer to be convicted based on perjured testimony.

E. Trial counsel was ineffective in failing to subject Prosecutor's case to meaningful adverse testing process.

On January 25, 2017, the Mississippi Supreme Court denied Pointer's application for leave to seek post-conviction relief, finding as follows:

> In this Application, Pointer claims that he is entitled to: (1) DNA testing of biological evidence not previously tested, and (2) post-conviction collateral relief based upon ineffective assistance of counsel. After due consideration, the panel finds that these claims lack an arguable basis, such that Pointer's Application should be denied.

*See* Exhibit C[5] (Order in Cause No. 2016-M-01714).

On March 7, 2017, Pointer filed the instant federal petition for a writ of *habeas corpus* under 28 U.S.C.A. § 2254, raising the following grounds for relief (as stated by Pointer):

**Ground One**: Trial counsel was ineffective in failing to test DNA evidence to prove self-defense. Attorney failed to test physical and biological evidence, never attempted to test blood on knife and throughout house to prove self-defense, therein proving innocent of murder. *See* memorandum in support.

**Ground Two**: Trial counsel was ineffective in failing to have 911 tape transcribed to distinguish Pointer's voice from other voices. Attorney failed to have tape transcribed to distinguish Pointer's voice from his father's voice to show his father had knife and was close to victim, which would have impeached key prosecution witness. *See* memorandum in support.

**Ground Three**: Trial counsel was ineffective in abandoning only defense of self-defense, where Pointer admitted responsibility in prior statements. Attorney failed to investigate, prepare, and present claim of self-defense, which was only realistic defense available after incriminating statements. Attorney called no witnesses, offered no evidence, or defense. *See* memorandum in support.

**Ground Four**: Trial counsel was ineffective in allowing Pointer to be convicted based on perjured testimony. Attorney failed to take corrective action to challenge key prosecution witness Nellie after she testified falsely and did not offer jury instruction

---

[5] The exhibits referenced in the instant memorandum opinion may be found attached to the States' Response to the instant petition for a writ of *habeas corpus*.

on false testimony. Attorney abandoned issue, leaving false testimony uncorrected. Court also used false testimony to affirm convictions. *See* memorandum in support.

**Ground Five**: Trial counsel was ineffective in failing to subject state's case to meaningful adverse testing process, counsel offered no defense and conceded guilt. Counsel offered no defense whatsoever, called no witness nor offered any evidence. Then conceded guilt stating, "I don't think my client murdered anybody." *See* memorandum in support.

Mr. Pointer has exhausted his state court remedies as to the issues raised in the instant federal *habeas corpus* petition, and return to the state court on these issues would be futile.

## Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered all grounds of the instant petition on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's

claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to any grounds of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection

(d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

## Ineffective Assistance of Counsel

Mr. Pointer frames his *habeas corpus* claims in terms of ineffective assistance of counsel. The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient, and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

**Ground One: Failure of Counsel to Test DNA Evidence to Show Self-Defense**

Mr. Pointer argues that trial counsel failed to test physical and biological evidence, never attempted to test blood on the knife and throughout Nellie's house to prove he acted in self-defense, which would prove him innocent of murder. This ground for relief must be dismissed because the Mississippi Supreme Court denied this claim on the merits, and Mr. Pointer's claims do not fall within either of the exceptions to the rule prohibiting federal *habeas corpus* review of such claims.

As set forth above, Pointer claims that his trial counsel failed to test physical and biological evidence, which he believes would prove him innocent of murder by proving that he acted in self-defense. He argues that this failure rises to the level of ineffective assistance of counsel. Pointer has only provided his bare allegations that the test results would prove him innocent of murder, and these unsupported allegations are insufficient to support a claim for *habeas corpus* relief. *Miller v. Johnson*, 200 F.3d at 282.

In any event, trial counsel's decision not to conduct testing of DNA was a rational one. Indeed, counsel even used the lack of DNA and forensic evidence as support for the defense's theory of the case: that Pointer's father acted alone in shooting Crawford and stabbing Brown to death. Counsel argued that there was no physical evidence to the contrary. Counsel argued that "all the evidence presented or rather the evidence that is not presented," would prove Pointer innocent of all charges. S.C.R. Vol. 3, p. 114.

Even if Pointer could show that counsel's decision was deficient, he has not shown prejudice to his legal position from that decision. The other evidence of Pointer's guilt was overwhelming, and included his recorded confessions of stabbing Brown to death – and the 911 tape recording on which Nellie clearly identifies Pointer as the person with a knife. S.C.R. Vol. 3, p. 167-168. Finally, Nellie

testified that the "Larry" she repeatedly implored to not hurt "that child" on the 911 recording was Pointer, her grandson. S.C.R. Vol. 3, p. 147. For these reasons, Pointer's claim regarding ineffective assistance of counsel in failing to test DNA evidence to prove self-defense is without merit and will be denied. The Mississippi Supreme Court likewise found that this issue lacks an arguable basis, and Pointer cannot show that the court was unreasonable in finding that this claim does not meet the *Strickland* standard.

### Ground Two: Counsel's Failure to Have the 911 Recording Transcribed

Mr. Pointer argues that counsel should have had the 911 recording transcribed so the jury could distinguish his voice from other voices. Pointer's trial counsel addressed these concerns during cross-examination of Nellie. The Mississippi Supreme Court found this argument to be without merit in its order denying post-conviction relief. Pointer's counsel had no need for the 911 recording to be transcribed, as counsel played the recording multiple times for Nellie and the jury to hear – and repeatedly emphasized the portion of the recording at issue. Counsel claimed that the recording captured Pointer's father, Larry, threatening Brown. S.C.R. Vol. 4, at p. 153-157, 165. A transcript of the recording would merely relay the precise information that the jury heard with their own ears on the recording.

In addition, a court nearly always issue an instruction to the jury stating that they must rely upon their hearing of a recording – and that a transcript is just an aid. Pointer, however, claims that a transcription of the 911 tape would have distinguished his voice from his father's, "which would have shown his father to have had the knife and to have been close to the victim, maybe stabbing the victim." ECF Doc. 1, p. 24. As the identity of the people speaking on the recording was an issue in the case, the trial court may not even have permitted a transcript (which purports to identify the

speaker). The record does not support Mr. Pointer's conclusory allegation that counsel was ineffective for failing to have the 911 tape transcribed. Trial counsel's failure to obtain a transcript of the 911 call did not create a reasonable probability that the jury verdict would have been different and thus did not constitute ineffective assistance. The Mississippi Supreme Court was reasonable to hold that trial counsel provided effective assistance under *Strickland*.

### Ground Three: Trial Counsel Should Have Argued Self-Defense

In Ground Three, Mr. Pointer argues that trial counsel was ineffective in abandoning his claim of self-defense, where Pointer admitted responsibility in prior statements. Trial counsel's choice not to pursue the theory of self-defense was sound strategy based on the evidence available to the prosecution. The jury heard Pointer's second statement to law enforcement. He told officers that he went inside Nellie's home and sought his father's assistance in dealing with Brown's alleged threats. The father armed himself, went outside, shot at Brown, missed, injuring Crawford, instead. Pointer and Larry then pulled Brown out of the car and began beating him. Nellie testified that she witnessed Pointer and his father both "jumping on this 120 pound boy," but that it was Pointer who had the knife. S.C.R. Vol. 4, at p. 167-168. The medical examiner also testified that the autopsy performed on the victim showed that Brown only weighed 113 pounds. S.C.R. Vol. 4, at p. 225. The record shows that Pointer was nearly unscathed, while the small victim was attacked by two (2) much larger men (Pointer weighed over 200 pounds and Larry weighed over 300.)

Pointer confessed to asking his father to get a knife and to taking the knife from his father – and killing Brown. In two (2) separate recorded confessions, Mr. Pointer admitted that he stabbed Brown repeatedly. As the record reflects, Brown was stabbed six (6) times in the head and neck,

nineteen (19) times in the torso, and once in the arm. S.C.R. Vol. 4, at p. 225-227. During the 911 call, Nellie clearly identified Pointer as the person with the knife in hand.

An allegation of self-defense would have hurt the defense's credibility given the facts of record – all of which point to Pointer and his father being the aggressors. Indeed, Brown was stabbed *twenty-six times* – hardly indicative of an attempt to fend off the diminutive Brown as he faced two angry foes, one outweighing him by over 80 pounds, the other by more than 180 pounds. The court cannot find counsel to be ineffective for failing to argue self-defense when the facts clearly show the defendant to be the aggressor.

Trial counsel pursued a clear defense strategy. The defense's theory of the case was that Larry acted alone in shooting Crawford and stabbing Brown to death. The record shows that trial counsel repeatedly called into question Nellie's testimony and the content of the 911 call recording that was played for the jury. Consistent with that strategy, trial counsel aggressively cross-examined Nellie during the trial and argued that Larry could be heard threatening Brown in the 911 recording, that Larry ran from Nellie's home after the crimes, and that Nellie was covering for Larry. Defense counsel argued that Pointer's confessions were statements made out of fear – and to protect his father, Larry. Defense counsel had the Herculean task of mounting a defense in the face of overwhelming evidence favoring the prosecution – including two recorded confessions. The Mississippi Supreme Court was reasonable in denying Mr. Pointer's claim of ineffective assistance of counsel for failure to pursue the theory of self-defense. This issue is likewise without merit.

### Ground Four: Counsel Permitted Pointer to Be Convicted Based Upon Perjured Testimony

In Ground Four, Pointer argues that his trial counsel was ineffective in allowing him to be convicted based on perjured testimony. Pointer argues that his counsel was ineffective in "fail[ing] to

take a more serious corrective action to challenge the key prosecution witness [Nellie] when she falsely testified." ECF Doc. 1, p. 28. Pointer argues further that his counsel did not offer a jury instruction on false testimony and that his counsel abandoned the issue, leaving the false testimony uncorrected. Pointer also argues that the court also used false testimony to affirm Pointer's convictions. None of these claims finds support in the record, and Mr. Pointer's arguments are meritless.

On direct appeal, Mr. Pointer raised issues regarding Nellie's testimony. In its opinion, the Mississippi Court of Appeals provided a thorough discussion of Pointer's allegations:

> Pointer claims that the court erred by allowing the jury to hear his grandmother's testimony because it was coerced and unreliable. He also argues that the judge should have given a "curative instruction" about the "injurious effect" of the allegedly coerced testimony. Finally, he complains that his attorney did not object to Nellie's testimony.
>
> These arguments are without merit. Nellie was not an accomplice or an informant, so there was no basis for the judge to instruct the jury to regard her testimony with caution or suspicion. Witness credibility is an issue "properly resolved by the jury." *Moore v. State*, 969 So.2d 153, 156 (¶11) (Miss. Ct. App. 2007). Also, on cross-examination, Pointer's trial counsel competently brought out the potential credibility issues with Nellie's testimony. Nellie's testimony was properly admitted, and she was subject to full cross-examination. No error was committed in connection with her testimony.

*Pointer v. State,* 202 So. 3d at 215. As the Mississippi Court of Appeals held, Pointer's arguments regarding Nellie's testimony are without merit.

In our legal system, the jury is the ultimate finder of fact in a criminal case. The Founders established in our Constitution that an accused has the right to a trial by jury in a criminal case. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* of the State and district wherein the crime shall have been committed...." U.S. Const. amend. VI. (emphasis added). The requirement of jury trial in a criminal case is

applicable to the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 156 (1968). It is the province of the jury to determine the facts in a criminal case – and apply to those facts to the law given by the court through jury instructions. Indeed, "[j]uries are typically called upon to render unanimous verdicts on the ultimate issues of a given case." *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S. Ct. 1227, 1236, 108 L. Ed. 2d 369 (U.S. 1990) (plurality opinion) (Blackmum, J., concurring). In this case, counsel cross-examined Nellie extensively regarding her recollection of the events. Weighing that testimony was the sole province of the jury, as the finder of fact. Counsel did what he could with an extremely difficult case, and the jury made its decision. Where, as here, counsel's actions do not amount to error, counsel was not deficient. The Mississippi Supreme Court was reasonable in holding that Pointer's trial counsel provided effective representation under *Strickland*.

**Ground Five: Counsel Was Ineffective for Failing to Subject the State's Case to Meaningful Adversarial Testing, Failing to Offer a Defense, and Conceding Guilt**

Pointer argues in his fifth ground for relief that trial counsel was ineffective in failing to subject the state's case to meaningful adversarial testing, offering no defense, and conceding his guilt. He alleges that trial counsel called no witnesses, offered no evidence, then conceded guilt by stating, "I don't think my client murdered anybody." ECF Doc. 1, p. 11. None of these allegations are supported by the record.

A review of the record in this case shows that trial counsel prepared and delivered a vigorous defense at all stages of the case, especially given the facts available and the overwhelming evidence of Pointer's guilt. Throughout trial, counsel challenged the State's evidence, objected to testimony, and subjected the State's witnesses to thorough cross-examination. Trial counsel's representation exceeded the minimum constitutional standard. Pointer's allegation that his counsel offered no

defense is also unsupported by the record in this case. At trial, counsel argued that Larry acted alone in shooting Crawford and stabbing Brown to death. Counsel argued that Larry was threatening Brown in the recording of the 911 call and that Nellie chose to cover for her son, Larry.

Mr. Pointer's claim regarding uncalled witnesses is also without merit, as:

> [c]omplaints of uncalled witnesses are not favored in federal *habeas corpus* review because allegations of what a witness would have testified are largely speculative. Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution.

*Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986) (internal citations omitted); *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Sayre v. Anderson*, 238 F.3d 631, 635-636 (5th Cir. 2001). Courts are reluctant to grant *habeas corpus* relief based upon uncalled witnesses "because the presentation of testimonial evidence is a matter of trial strategy." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). There is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt. *See Strickland*, 466 U.S. at 693-696, 104 S.Ct., at 2067-2069; *see generally Davis v. Alabama*, 596 F.2d 1214, 1221-1223 (CAF 1979), *vacated as moot*, 446 U.S. 903 (1980). Mr. Pointer has not shown that counsel made specific errors that undermined the reliability jury's verdict in this case.

Pointer's trial counsel was in the strongest position to choose which theory to use in Pointer's defense, whether or not to call witnesses, and which witnesses to call, if any. As such, counsel's choice not to call witnesses was a strategic trial decision. Mr. Pointer has not shown that trial counsel's performance and decisions regarding witnesses and evidence was deficient. Pointer has likewise failed to overcome the presumption that, under the circumstances, trial counsel's challenged actions could be considered sound trial strategy. Furthermore, courts must eliminate the distorting effects of hindsight, and must not assume deficient performance out of disagreement with trial

counsel's strategy. It is not uncommon for defense counsel to decline to call witnesses to the stand, and Mr. Pointer has not identified any witnesses or testimony he believes might have aided his defense. In any event, he has also failed to prove prejudice, by demonstrating that the result of the trial would have been different or that counsel's performance rendered the result of the trial fundamentally unfair or unreliable.

Mr. Pointer's final claim in Ground Five is that trial counsel conceded his guilt by stating, "I don't think my client murdered anybody." This statement aligns with the defense's theory of the case, that Pointer's father acted alone in the murder of Brown and the aggravated assault on Crawford. The record shows that Pointer took the single statement out of context and attempted to use it to prove a concession of guilt by trial counsel. Defense counsel was making an argument consistent with the theory of the case:

> Let's be clear. I don't think my client murdered anybody. It doesn't matter what type of murder we are talking about because my client didn't murder anyone. He didn't shoot anybody. He didn't stab anybody. They don't have any evidence that he did.

S.C.R. Vol. 4, at p. 277.

Pointer's counsel again emphasized the lack of DNA evidence as support for the defense's theory of the case. Pointer takes counsel's statements out of context in his final ground for relief in an attempt to show that counsel conceded his guilt. Trial counsel argued:

> Kelly McMillen told you he had a confession. That was good enough. He though y'all would convict him anyway. Y'all don't need anything else. They're that good. They sent the evidence off to the lab to be tested. The lab wrote them back in 2012 and told them they didn't have prints from my client. He wasn't even submitted as a suspect. His daddy was. They thought his daddy did it, not my client. They don't even bother to send them in. Why? Y'all will convict him. Who needs DNA? DNA also exonerates people. I would liked to have had the DNA. Then I would know that my client didn't do it, but we didn't get that. We didn't get it. Probably a reason for that.

S.C.R. Vol 4, at p. 278.  Counsel was taking the jury back through the trial testimony and the evidence presented by the State – and pointing out perceived deficiencies in that evidence.  Trial counsel did not concede Pointer's guilt; instead, she argued that the State did not conduct DNA testing because DNA might exonerate the defendant.

Mr. Pointer has not shown that counsel's performance was deficient; nor has he shown that he was prejudiced by trial counsel's closing argument regarding the lack of DNA evidence.  Again, the prosecution had a great deal of evidence to prove Mr. Pointer's guilt.  This ground for relief is without substantive merit, and Mr. Pointer has not shown that the Mississippi Supreme Court's decision finding that these claims did not meet the *Strickland* standard was unreasonable.

## Cumulative Error

Finally, Pointer argues that "given the nature of [the] allegations in this case, … the cumulative impact of Moore's deficiencies prejudiced his defense."  ECF Doc. 1, p. 33.  A cumulation of non-errors cannot rise to the level of error.  *See United States v. Moye,* 951 F.2d 59, 63 n. 7 (5th Cir. 1992).  Trial counsel subjected Nellie to vigorous cross-examination that challenged her credibility, the weight and value of which were solely for the jury to resolve.  Mr. Pointer has not established deficient performance under *Strickland, supra*, and, where there is no deficiency, there can be no prejudice.  The Mississippi Supreme Court was reasonable to hold that Pointer's trial counsel provided effective representation under *Strickland*.

## Conclusion

For the reasons set forth above, none of the grounds for relief in the instant petition for a writ of *habeas corpus* have merit, and the petition will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 26th day of March, 2020.

/s/ Neal Biggers
NEAL B. BIGGERS
SENIOR U. S. DISTRICT JUDGE